

**FILED**
9:05 am, 6/23/25
**U.S. Magistrate Judge**

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSE BRADLEY ISAACSON

    Defendant.

**CRIMINAL COMPLAINT**

Case Number: 25-mj-49

I, Michael C. Hardin, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### COUNT ONE

Between on or about June 21-22, 2025, in the District of Wyoming, within the boundaries of Yellowstone National Park, an area within the special maritime and territorial jurisdiction of the United States, and elsewhere, the Defendant, **JOSE BRADLEY ISAACSON**, traveled in interstate commerce from the state of Utah to Yellowstone National Park in the State of Wyoming with the intent to kill, injure, and harass another person, and in the course of and as a result of such travel caused substantial emotional distress to T.B., in violation of Title 18, United States Code, Section 2261A.

In violation of 8 U.S.C. § 2261A, (1)(B), and 2261(b).

### COUNT TWO

On or about June 21, 2025, in the District of Wyoming, within the boundaries of Yellowstone National Park, an area within the special maritime and territorial jurisdiction of the United States, the Defendant, **JOSE BRADLEY ISAACSON**, did knowingly assault T.B., that is, grabbed her in an attempt to force her to accompany him, causing a welt/abrasion to T.B.

In violation of 8 U.S.C. § 113(a)(5).

I further state that I am a Special Agent with the National Park Service, and that this complaint is based on the following facts: *see attached sworn statement.*

_____
Signature of Complainant
Michael C. Hardin

Sworn and subscribed,

June 23, 2025            at     Mammoth, Wyoming
Date                                    City and State

HON. STEPHANIE HAMBRICK            _____
Name & Title of Judicial Officer              Signature of Judicial Officer

I, Michael C. Hardin, being duly sworn, hereby depose and state as follows:

I am a Special Agent (SA) with the National Park Service (NPS), United States Department of the Interior. I am presently assigned to the North Central Field Office of the NPS Investigative Services Branch, duty stationed at Yellowstone National Park. I have been employed by the NPS since 1996 and have worked in the role of Special Agent and as a US Park Ranger in Arizona, Florida, Wyoming, Colorado and California. Prior to working for the NPS, I was an enlisted Military Police Officer for the United States Army from 1987 to 1991. I have received training at the Federal Law Enforcement Training Center, completing the Land Management Training Program (basic academy) and Department of Interior Investigator Training Program. I have attended numerous training courses in a variety of law enforcement subjects and hold several instructor certifications in law enforcement disciplines.

1. During my law enforcement career, I have participated in numerous investigations involving homicide, assault, sexual assault, theft and stalking. As a result of my training and experience, I have become familiar with the many techniques employed by individuals and organizations that endeavor to further these types of criminal activity.

2. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 United States Code section 2261A (Stalking), Title 18 United States Code section 2111 (Robbery within special maritime and territorial jurisdiction), and 18 United States Code section

113(a)(5) (Simple Assault) in addition to violations of other laws, have been committed by Jose Bradley ISAACSON.

3. The statements in this affidavit are based on my personal observations, my training and experience, my investigation of this matter, and information obtained from other agents, investigators and witnesses. Because this affidavit is submitted for the limited purpose of securing a complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation.

## PROBABLE CAUSE

4. Probable cause exists that in the two days prior to Thursday, June 19, 2025, Jose Bradley ISAACSON, of Logan, Utah, sent a series of text messages to ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ (hereafter referred to as ▇▇), who is employed and residing in Yellowstone National Park, containing demands and threatening language to motivate ▇▇ to remove male acquaintances from ▇▇ own messaging apps and giving ▇▇ commands to control ▇▇ actions. He threatened to travel from his home in the Logan, Utah area to Yellowstone National Park to carry out specific and vague threats of personal harm to ▇▇ and ▇▇ family members and work associates if ▇▇ did not comply with his demands, causing ▇▇ to feel fearful and remain in ▇▇ dormitory room so as not to encounter him. On June 21, 2025, ISAACSON did travel to Yellowstone National Park where he continued to engage in conduct that caused ▇▇ substantial emotional distress in violation of 18 USC § 2261A, (1)(B), (Interstate

Stalking).

5. Furthermore, on June 21, 2025, ISAACSON did travel to Old Faithful Village in the Park. He met ▇ in person, and when ▇ would not leave with him, he grabbed ahold of ▇ resulting in a scuffle between them, in violation of 18 USC § 113 (a)(5) (Simple Assault).

6. Yellowstone National Park, a unit of the NPS, is an area of special maritime and territorial jurisdiction ("SMTJ") of the United States.

## FACTS ESTABLISHING PROBABLE CAUSE

7. On Thursday, June 19, 2025, ▇ approached a group of US Park rangers outside the Old Faithful Ranger Station. ▇ was distraught and told them ▇ needed to talk with someone.

8. US Park Ranger (PR) Christine Pinon took ▇ inside the station and interviewed ▇. ▇ stated ▇ ex-boyfriend from home (Utah), ISAACSON, was sending ▇ a lot of threatening text messages and voice calls with statements to the effect of, "I'm going to come up there and I'm going to shoot you." ISAACSON knows people who can provide him firearms. He also knows ▇ location. ▇ said ▇ was really scared by the situation. ▇ thought he might come to ▇ and wait around the area until he located ▇

9. ▇ and ISAACSON were in an intimate, dating relationship, off and on, for about two years. The broke up about every three months but would get back together within a few days. One month ago, they broke up again and ▇ had not

3

heard from him until this current string of threatening messages over the previous two days. Prior to the break-up, they lived together for four or five months, sharing a room together.

10. ISAACSON coerced ▓ to set ▓ phone to share ▓ location with him. ▓ turned off location sharing about an hour before ▓ sought help from the Rangers.

11. According to ▓ ISAACSON has never made threats of this magnitude before. He has been verbally aggressive toward ▓ and has thrown objects around. In the past ▓ has always tried to give in to what he wanted so the situation did not get any worse than it already was. As a result of ISAACSON's communications and behavior since Tuesday, June 17, 2025, ▓ feels traumatized and very scared of him.

12. During the interview, ▓ shared a text message string with PR Pinon. Pinon took photographs of the texts and uploaded them into evidence.com.

13. Also, during the seventeen-minute-long interview, PR Pinon could see ISSACSON made multiple attempts to call ▓ Counting the calls later, PR Pinon determined ISAACSON tried to call ▓ a total of ten (10) times during the 17 minutes PR Pinon was interviewing ▓.

14. According to language in the text messages, ISAACSON demanded ▓ remove other males from ▓ messaging apps. ▓ tried to explain they are co-workers, talking about work, but he was not appeased. He also told ▓ he wanted them (▓ and ISAACSON) to restart their relationship.

15. The worst communications from ISAACSON occurred, by voice, over the

4

phone. He said things to ▓ like he was going to go to Salt Lake City to get a gun then come to Yellowstone and kill ▓ This concerned T.B. because ▓ knows he has a friend in Salt Lake City who can provide him a firearm. ▓ does not know the name of this person because they use code names. During other calls, ISAACSON threatened to hurt ▓ Mother and sister in ▓ ▓ was so concerned ▓ called the local police in ▓ to conduct a welfare check on ▓ family. These phone conversations were not recorded.

16. Selected messages seen and preserved by PR Pinon read as follows:

- ISAACSON – "Go into ur snap text that bro ▓ to block u and stay as far away from you as possible tell him uf bf kill people"
- ▓ –"We were talking about work"
- ISAACSON – "Tell them all"
- ▓ – "They're all gone"
- ISAACSON – "Or don't either way they are meeting me face to face within this very fucking week"
- ISAACSON- "…Like I said we either growing up over night a figuring this shit our you and me or it's a crash out event I'm ready to do whatever. I stay true to my work I'll be seeing you this week sometime [heart emoji] I love you ▓ and I can wait to look int those beautiful eyes [kissing emoji]
- ISAACSON – "I told u, you broke me, now I gotta handle it cuz if I can't have it no one is fr"
- ISAACSON – "I told them u was mine and now I kinda look like a bitch

- if o don't do anything"
- ISAACSON - "…I want you to know I'm not going back to jail ever and I sure as shit ain't going to prison"
- ISSACSON - "So if swat outside just know it was u that got me killed"
- ISAACSON - "So if u fr love me fix this rn rn"
- ISAACSON - "There is still an out"
- ▮ – "How do I fix it???!!!"
- ▮ – "I was jose. I was listening to you but I can't put on a front and pretends everything's ok."
- ISAACSON – "That's fine evrything is not okay anymore so just forget about everything and just pray I don't show up."

17. At the end of the message string are several more texts and voice texts wherein ISAACSON instructed ▮ to send him ▮ passwords to, "everything" and to send $500 to his account. ▮ complied with his instructions.

18. As a result of the interview, Yellowstone National Park issued a "Be On the lookout" (BOLO) for ISAACSON and his vehicle. On about June 21, 2025, ISAACSON told ▮ that if their relationship was really going to end this way, he needed to get something out of it. ▮ sent an additional $2000 to him. Afterward, ISAACSON called ▮ told ▮ was stupid and that it was never going to end.

19. On the evening of June 21, 2025, ISAACSON traveled to ▮ ▮ Yellowstone National Park, and located ▮ at her dormitory. They met, in person, in a lighted area outside the external stairway leading to the second

floor of the dorm. He told ▆ he brought the money with him, to ▆ and would give it back to ▆ ISAACSON wanted ▆ to leave with him. When ▆ refused, ISAACSON grabbed ▆ and a scuffle ensued on the stairway. ISAACSON took ▆'s phone and fled the area moments before Rangers arrived at the scene. ▆ suffered an approximately six-inch welt and/or abrasion on the right side of ▆ upper back.

20. ▆ borrowed a phone from a bystander and called 911 to report the altercation.

21. While searching the area for ISAACSON, Rangers located his car, a green 2011 Cadillac CTS, bearing Utah license plate ▆, in the East Parking Lot of the main village area and it was impounded.

22. Park Rangers searched for ISAACSON through the night but did not find him. At some point in the early morning hours of June 22, 2025, ISAACSON stole a rental car that was left, unattended and running, in the Old Faithful Inn parking lot. He fled southbound at high speed and entered Grand Teton National Park, making it 65 miles before Rangers from that park used tire deflation devices to end his flight. ISAACSON then fled from that scene on foot and was captured by Grand Teton Rangers.

## PENALTY SUMMARY

| | |
|---|---|
| **DEFENDANT NAME:** | JOSE BRADLEY ISAACSON |
| **DATE:** | June 23, 2025 |
| **INTERPRETER NEEDED:** | No |
| **VICTIM(S):** | Yes |
| **OFFENSE/PENALTIES:** | 18 U.S.C. § 2261A, (1)(B), and 2261(b); (Interstate Stalking) |
| | 0-5 YEARS IMPRISONMENT<br>UP TO $250,000 FINE<br>UP TO 3 YEARS SUPERVISED RELEASE<br>$100 SPECIAL ASSESSMENT |
| | 18 U.S.C. § 113(a)(5)<br>(Simple Assault) |
| | 0-6 MONTHS IMPRISONMENT<br>UP TO $5000 FINE<br>UP TO 1 YEAR SUPERVISED RELEASE<br>$25 SPECIAL ASSESSMENT |
| **AGENT:** | Special Agent Michael C. Hardin, NPS |
| **AUSA:** | Kerry J. Jacobson, United States Attorney |
| **ESTIMATED TIME OF TRIAL:** | 2-5 Days |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | Yes |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | No |